# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA
U.S. Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 8700
Washington, DC 20530,

STATE OF COLORADO
Colorado Department of Law
1300 Broadway, 7th Floor
Denver, CO 80203,

STATE OF IDAHO
Office of the Attorney General of Idaho
954 W. Jefferson Street, Second Floor
P.O. Box 83720
Boise, ID 83720,

COMMONWEALTH OF PENNSYLVANIA
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120,

STATE OF TEXAS
Office of the Attorney General of Texas
300 West 15th Street, 7th Floor
Austin, TX 78701,

COMMONWEALTH OF VIRGINIA
Office of the Attorney General of Virginia
900 East Main Street
Richmond, VA 23219,

STATE OF WASHINGTON
Office of the Attorney General of Washington
800 Fifth Avenue, Suite 2000
Seattle, WA 98104,

    and

STATE OF WEST VIRGINIA
Office of the Attorney General of West Virginia
269 Aikens Center
Martinsburg, WV 25404

                       *Plaintiffs,*

      v.

SPRINGLEAF HOLDINGS, INC.
601 N.W. Second Street
Evansville, IN 47708,

ONEMAIN FINANCIAL HOLDINGS, LLC
300 Saint Paul Place
Baltimore, MD 21202,

    and

CITIFINANCIAL CREDIT COMPANY
c/o CITIGROUP INC.
399 Park Avenue
New York, NY 10022

                *Defendants.*

## COMPLAINT

    The United States of America ("United States"), acting under the direction of the Attorney General of the United States, and the States of Colorado, Idaho, Texas, Washington and West Virginia and the Commonwealths of Pennsylvania and Virginia (collectively, "Plaintiff States"), acting by and through their respective Offices of the Attorney General, bring this civil action to enjoin the proposed acquisition of OneMain Financial Holdings, LLC ("OneMain") by Springleaf Holdings, Inc. ("Springleaf") and to obtain other equitable relief.

## I. NATURE OF THE ACTION

1.      OneMain and Springleaf are the two largest lenders that offer personal installment loans to subprime borrowers in the United States, and the only two with a nationwide branch network.  Personal installment loans to subprime borrowers are fixed-rate, fixed-term and fully amortized loan products that appeal to borrowers who have limited access to credit from traditional banking institutions.  OneMain and Springleaf specialize in the same products (large installment loans typically ranging from $3,000 to $6,000), target the same customer base, and often operate branches within close proximity to one another.

2.      In local markets across Arizona, California, Colorado, Idaho, North Carolina, Ohio, Pennsylvania, Texas, Virginia, Washington, and West Virginia, Springleaf and OneMain face limited competition for the provision of personal installment loans to subprime borrowers and serve as each other's closest – and often only – competitor.  Elimination of the competition between Springleaf and OneMain would leave subprime borrowers seeking personal installment loans with few choices.  This reduction in consumer choice may drive many financially struggling borrowers to much more expensive forms of credit or, worse, leave them with no reasonable alternative.  As a result, Springleaf's proposed acquisition of OneMain likely would substantially lessen competition in the provision of personal installment loans to subprime borrowers in numerous local markets, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

## II. THE DEFENDANTS AND THE TRANSACTION

3.      Defendant Springleaf is a Delaware corporation headquartered in Evansville, Indiana.  Springleaf is the second-largest provider of personal installment loans to subprime borrowers in the United States, with approximately 830 branches in 27 states.  Springleaf has a consumer loan portfolio that totals $4.0 billion.

3

4.      Defendant OneMain, a Delaware limited liability company headquartered in Baltimore, Maryland, is the largest provider of personal installment loans to subprime borrowers in the United States, with 1,139 branch locations in 43 states.  OneMain has a consumer loan portfolio that totals $8.4 billion.  OneMain is a subsidiary of Defendant CitiFinancial Credit Company ("CitiFinancial"), a Delaware corporation headquartered in Dallas, Texas. CitiFinancial is a holding company that is a wholly owned subsidiary of Citigroup, Inc.

5.      Pursuant to a Purchase Agreement dated March 2, 2015, Springleaf agreed to purchase OneMain from CitiFinancial for $4.25 billion.

### III.  JURISDICTION AND VENUE

6.      The United States brings this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25, as amended, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.

7.      The Plaintiff States bring this action under Section 16 of the Clayton Act, 15 U.S.C. § 26, to prevent and restrain Springleaf and OneMain from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.  The Plaintiff States, by and through their respective Offices of the Attorney General, bring this action as *parens patriae* on behalf of the citizens, general welfare, and economy of each of their states.

8.      The Court has subject matter jurisdiction over this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25, and 28 U.S.C. §§ 1331, 1337(a), and 1345.  Defendants offer personal installment loans to customers in the United States in a regular, continuous, and substantial flow of interstate commerce.  Defendants' activities in the provision of personal installment loans have had a substantial effect upon interstate commerce.

9.     Defendants have consented to venue and personal jurisdiction in this District. Therefore, venue in this District is proper under Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b) and (c).

## IV.  TRADE AND COMMERCE

### A.     Personal Installment Loans to Subprime Borrowers

10.    The average size of a personal installment loan typically falls in the range of $3,000 to $6,000.  Personal installment loans to subprime borrowers are closed-end, fixed-rate, fixed-term, and fully amortized loan products.  In a fully amortized loan, both principal and interest are paid fully through scheduled installments by the end of the loan term, which typically is between 18 and 60 months in duration.  Each monthly payment is the same amount and the schedule of payments is clear.  If the borrower makes each scheduled payment, at the end of the loan term, the loan is repaid in full.

11.    Personal installment lenders target a unique segment of borrowers who may not be able to obtain cheaper sources of credit from other financial institutions but have enough cash flow to afford the monthly payments of personal installment loans.  Borrowers of personal installment loans are considered "subprime" because of blemishes in their credit histories, such as serious delinquencies or defaults.  These borrowers likely have been denied credit by a bank in the past and turn to personal installment lenders for the speed, ease, and likelihood of success in obtaining credit.  Their borrowing needs vary, for example, from paying for unexpected expenses, such as car repairs or medical bills, to consolidating debts.  A typical subprime borrower's annual income is in the range of $35,000 to $45,000.

12.    The blemished credit histories of subprime borrowers suggest a higher propensity for default on future loans relative to so-called "prime" borrowers.  Personal installment lenders mitigate this credit risk by closely analyzing a borrower's characteristics and ability to repay the

5

loan. The lender examines several categories of information about the borrower, including, among other criteria, credit history, income and outstanding debts, stability of employment, and availability or value of collateral. Lenders typically require borrowers to meet face-to-face at a branch location to close the loan, even if the application begins online. This face-to-face meeting allows the lender to efficiently collect information used in underwriting and verify key documents (reducing the risk of fraud). Subprime borrowers seeking installment loans also value having a branch office close to where they live or work; a nearby branch reduces the borrower's travel cost to close the loan and allows convenient and timely access to loan proceeds. If approved, borrowers immediately obtain the funds at the branch.

13.     Local branch presence also helps lenders and borrowers establish close customer relationships during the life of the loan. Local branch employees monitor delinquent payments of existing customers and assist borrowers in meeting their payment obligations to minimize loan loss. Borrowers also benefit from knowing the local branch employees. Borrowers may visit a branch to make payments, refinance their loans, or speak with a branch employee at times of financial difficulties. Lenders place branches where their target borrowers live or work so that it is convenient for their borrowers to come into a branch.

14.     The interest rate on a personal installment loan is the largest component of the total cost of a loan. Other costs, such as origination fees, maintenance fees, and closing fees, increase the effective interest rate that a borrower will pay. The Annual Percentage Rate ("APR") combines the two components, interest rates and fees, to indicate the annual charges associated with the loan. Although the maximum interest rates and fees charged on personal installment loans vary by state, Springleaf and OneMain have a self-imposed interest rate cap of 36 percent on their respective loans.

15.     While borrowers consider APR in selecting a loan, subprime borrowers typically focus most on the monthly payment and on the ease and speed of obtaining approval.  Subprime borrowers' main concerns are whether the payment will fit into their monthly budget and whether they can obtain the money quickly to meet their needs.  For these reasons, negotiations between borrowers and lenders tend to focus more on the amount of the loan, the repayment terms, and collateral requirements than on the rates and fees.  When a subprime borrower needs or wants a lower monthly payment, personal installment lenders generally lower the amount of the loan or lengthen the term of the loan.

16.     Every state requires personal installment lenders to obtain licenses to offer loans to subprime borrowers.  Many states also have regulations governing the interest rates and fees on loans charged by consumer finance companies licensed to operate in the state.  Some states impose a maximum rate and fee for all personal installment loans, while others have a tiered-rate system that establishes different interest rates and fees for different loan amounts.  State regulations significantly affect the number of personal installment lenders offering loans to subprime lenders in the state.

**B.     Relevant Product Market**

17.     Subprime borrowers turn to personal installment loans when they need cash but have limited access to credit from banks, credit card companies, and other lenders.  The products offered by these lenders are not meaningful substitutes for personal installment loans for a substantial number of subprime borrowers.

18.     Banks and credit unions offer personal installment loans at rates and terms much better than those offered by personal installment lenders, but subprime borrowers typically do not meet the underwriting criteria of those institutions and are unlikely to be approved.  Further, the loan application and underwriting process at banks and credit unions typically take much

7

longer than that of personal installment lenders, who can provide subprime borrowers with funds on a far quicker timetable. For these and other reasons, subprime borrowers would not turn to banks and credit unions as an alternative in the event personal installment lenders were to increase the interest rate or otherwise make their loan terms less appealing by a small but significant amount.

19.    Payday and title lenders provide short-term cash, but charge much higher rates and fees, usually lend in amounts well below $1,000, and require far quicker repayment than personal installment lenders. Specifically, rates and fees for these types of short-term cash advances can exceed 250 percent APR with repayment generally due in less than 30 days. Given these key differences, subprime borrowers likely would not turn to payday and title loans as an alternative in the event personal installment lenders were to increase the interest rate or otherwise make their loan terms less appealing by a small but significant amount.

20.    Most subprime borrowers also cannot turn to credit cards as an alternative to personal installment loans. Subprime borrowers frequently have difficulty obtaining credit cards, and those who have credit cards have often reached their maximum available credit limits (which are much lower than those given to prime borrowers), or have limited access to additional credit extensions. Although subprime borrowers may use credit cards for everyday purchases, such as groceries or dining out, they typically have insufficient remaining credit to pay for larger expenses such as major car repairs or significant medical bills. Subprime borrowers therefore could not generally turn to credit cards as an alternative in the event lenders offering personal installment loans to subprime borrowers were to increase the interest rate or otherwise make their loan terms less appealing by a small but significant amount.

21.    Finally, although online lenders have been successful in making loans to prime borrowers, they face challenges in meeting the needs of and mitigating the credit risk posed by

subprime borrowers.  Without a local branch presence, online lenders do not maintain close

customer relationships, nor can they conduct face-to-face meetings to verify key documents,

measures which reduce the risk of fraud and borrower default.  Online lenders tend to focus on

borrowers with better credit profiles or higher incomes than the borrowers typically served by

personal installment lenders with branches in local markets.  Furthermore, online lenders are

unable to process an application and distribute loan proceeds as quickly as local personal

installment lenders.  For these reasons, subprime borrowers generally would not turn to loans

offered by online lenders in the event lenders offering personal installment loans to subprime

borrowers were to increase the interest rate or otherwise make their loan terms less appealing by

a small but significant amount.

22.     Accordingly, the provision of personal installment loans to subprime borrowers is

a line of commerce and a relevant product market within the meaning of Section 7 of the Clayton

Act.

C.     **Relevant Geographic Market**

23.     Subprime borrowers seeking personal installment loans value convenience, which

includes quick access to the borrowed funds and minimal travel time.  Consequently, subprime

borrowers considering a personal installment lender look for a branch near where they live or

where they work.  While the distance a borrower is willing to travel may vary by geography, the

vast majority of subprime borrowers travel less than twenty miles to a branch for a personal

installment loan.

24.     Personal installment lenders have established local trade areas for their branches.

Lenders usually rely on direct mail solicitations as the primary means of marketing and solicit

customers who live within close proximity to their branches.  Lenders who place branches in the

same areas compete to serve the same target borrower base.  Borrowers view lenders with

branches in close proximity to each other as close substitutes.

25.     For these reasons, the overlapping trade areas of competing personal installment

lenders form geographic markets where the lenders located within the trade areas compete for

subprime borrowers who live or work near the branches.  The size and shape of the overlapping

trade areas of these branches may vary as the distance borrowers are willing to travel depends on

factors specific to each local area.  Even so, typically more than three-quarters of the personal

installment loans to subprime borrowers made by a given branch are made to borrowers residing

within twenty miles of the branch.  Personal installment lenders with branches located outside

these trade areas usually are not convenient alternatives for borrowers.

26.     Springleaf and OneMain have a high degree of geographic overlap between their

branch networks.  In local areas within and around 126 towns and municipalities in eleven states

– Arizona, California, Colorado, Idaho, North Carolina, Ohio, Pennsylvania, Texas, Virginia,

Washington, and West Virginia – Springleaf and OneMain have branches located within close

proximity of one another, often within five miles.  In these overlapping trade areas of

Springleaf's and OneMain's branches, few other lenders have branches offering personal

installment loans to subprime borrowers.  In many of these overlapping trade areas, Springleaf

and OneMain are the only two personal installment lenders.

27.     In local areas within and around 126 towns and municipalities in Arizona,

California, Colorado, Idaho, North Carolina, Ohio, Pennsylvania, Texas, Virginia, Washington,

and West Virginia, subprime borrowers of personal installment loans would not seek such loans

outside the local areas in the event lenders offering personal installment loans to subprime

borrowers were to increase the interest rate or otherwise make their loans less appealing by a

small but significant amount.  Accordingly, the overlapping trade areas located in the 126 towns

and municipalities identified in the Appendix hereto constitute relevant geographic markets within the meaning of Section 7 of the Clayton Act.

### D.   Anticompetitive Effects

28.     Springleaf and OneMain are the two largest providers of personal installment loans to subprime borrowers in the United States.  Both companies have a long history in the business of providing personal installment loans to subprime borrowers, have built an extensive branch network, and have established close ties to the local communities.  Leveraging their years of experience and large customer base, both companies have developed sophisticated risk analytics that allow them to minimize expected credit losses when extending loans to borrowers with blemished credit histories.

29.     Compared to Springleaf and OneMain, other lenders that offer personal installment loans to subprime borrowers have much smaller branch footprints and are present in a more limited number of states and local markets.  These personal installment lenders may operate in states with regulations that permit higher interest rates and fees, rather than in those with low interest rate caps.  State regulations, lack of scale, and other economic factors have limited the competitive presence of these lenders in many states and local areas.

30.     In local markets within and around the 126 towns and municipalities in Arizona, California, Colorado, Idaho, North Carolina, Ohio, Pennsylvania, Texas, Virginia, Washington, and West Virginia identified in the Appendix, the market for the provision of personal installment loans to subprime borrowers is highly concentrated.  In the local areas within these states, Springleaf and OneMain are the largest providers of personal installment loans to subprime borrowers, and face little, if any, competition from other personal installment lenders. Even if other providers of personal installment loans to subprime borrowers have a branch presence in these states, these lenders compete in a limited number of local markets or in

11

communities located far from a Springleaf or OneMain branch.  As a result, these local markets are highly concentrated.

31.     In local markets within and around the 126 towns and municipalities in Arizona, California, Colorado, Idaho, North Carolina, Ohio, Pennsylvania, Texas, Virginia, Washington, and West Virginia identified in the Appendix, the proposed acquisition would substantially increase concentration in the market for personal installment loans to subprime borrowers. Without the benefit of head-to-head competition between Springleaf and OneMain, subprime borrowers are likely to face higher interest rates or fees, greater limits on the amount they can borrow and restraints on their ability to obtain loans, and more onerous loan terms.  The proposed acquisition therefore likely will substantially lessen competition in the provision of personal installment loans to subprime borrowers.

E.     **Entry**

32.     Entry of additional competitors into the provision of personal installment loans to subprime borrowers in local markets in Arizona, California, Colorado, Idaho, North Carolina, Ohio, Pennsylvania, Texas, Virginia, Washington, and West Virginia is unlikely to be timely or sufficient to defeat the likely anticompetitive effects of the proposed acquisition.  In some states, the state regulatory rate caps create unattractive markets for entry.  In others, lenders face entry barriers in terms of cost and time to establish a local branch presence.  Personal installment lenders need experienced branch employees with knowledge of the local market to build a base of customer relationships.  A new lender in a local market faces more risks as it does not have knowledge of local market conditions.  A lender also must obtain funding and devote resources to building a successful local presence.

33.     As a result of these barriers, entry into the provision of personal installment loans to subprime borrowers in the local markets identified above would not be timely, likely, or

12

sufficient to defeat the substantial lessening of competition that likely would result from Springleaf's acquisition of OneMain.

## V. VIOLATION ALLEGED

34. The acquisition of OneMain by Springleaf likely would substantially lessen competition in the provision of personal installment loans to subprime borrowers in the relevant geographic markets identified the Appendix, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

35. Unless enjoined, the proposed acquisition likely would have the following anticompetitive effects, among others:

> a. actual and potential competition between Springleaf and OneMain in the provision of personal installment loans to subprime borrowers in local markets in Arizona, California, Colorado, Idaho, North Carolina, Ohio, Pennsylvania, Texas, Virginia, Washington, and West Virginia would be eliminated;

> b. competition generally in the provision of personal installment loans to subprime borrowers in local markets in Arizona, California, Colorado, Idaho, North Carolina, Ohio, Pennsylvania, Texas, Virginia, Washington, and West Virginia would be substantially lessened; and

> c. prices and other terms for personal installment loans to subprime borrowers in local markets in Arizona, California, Colorado, Idaho, North Carolina, Ohio, Pennsylvania, Texas, Virginia, Washington, and West Virginia would become less favorable to consumers and access to such loans by subprime borrowers would decrease.

## VI.     **REQUESTED RELIEF**

36.     Plaintiffs request that the Court:

a.   adjudge and decree that Springleaf's proposed acquisition of OneMain is
     unlawful and in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18;

b.   preliminarily and permanently enjoin and restrain Defendants and all persons
     acting on their behalf from entering into any other agreement, understanding, or
     plan by which Springleaf would acquire OneMain;

c.   award Plaintiffs their costs for this action; and

d.   grant Plaintiffs such other and further relief as the Court deems just and proper.

DATED: _November 13_, 2015


Respectfully submitted,


FOR PLAINTIFF UNITED STATES OF AMERICA:

_____          _____
WILLIAM J. BAER (D.C. Bar # 324723)    MARIBETH PETRIZZI (D.C. Bar #435204)
Assistant Attorney General             Chief, Litigation II Section


_____          _____
RENATA B. HESSE (D.C. Bar # 466107)    DOROTHY FOUNTAIN (D.C. Bar #439469)
Deputy Assistant Attorney General      Assistant Chief, Litigation II Section


_____          _____
PATRICIA A. BRINK                      ANGELA TING (D.C. Bar #449576)
Director of Civil Enforcement          STEPHANIE FLEMING
                                       LESLIE PERTIZ
                                       JAY D. OWEN
                                       TARA SHINNICK (D.C. Bar #501462)
                                       REBECCA VALENTINE (D.C. Bar # 989607)

                                       United States Department of Justice
                                       Antitrust Division, Litigation II Section
                                       450 Fifth Street, N.W., Suite 8700
                                       Washington, D.C. 20530
                                       (202) 616-7721
                                       (202) 514-9033 (Facsimile)
                                       angela.ting@usdoj.gov

FOR PLAINTIFF STATE OF COLORADO:

CYNTHIA H. COFFMAN
Attorney General of Colorado


DEVIN LAIHO
Assistant Attorney General
Consumer Protection Section
Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 7th Floor
Denver, Colorado 80203
(720) 508-6219
(720) 508-6040 (Facsimile)
devin.laiho@state.co.us

FOR PLAINTIFF STATE OF IDAHO:

LAWRENCE G. WASDEN
Attorney General of Idaho

BRETT T. DELANGE
Idaho State Bar No. 3628
Deputy Attorney General
Consumer Protection Division
Office of the Attorney General of Idaho
954 W. Jefferson St, Second Floor
P.O. Box 83720
Boise, Idaho 83720-0010
(208) 334-4114
(208) 334-4151 (facsimile)
brett.delange@ag.idaho.gov

**FOR PLAINTIFF COMMONWEALTH OF PENNSYLVANIA**

Tracy W. Wertz
Chief Deputy Attorney General
Antitrust Section

Joseph S. Betsko
State Bar No. 82620
Senior Deputy Attorney General
Antitrust Section
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
(717) 787-4530
(717) 787-1190 (facsimile)
jbetsko@attorneygeneral.gov

FOR PLAINTIFF STATE OF TEXAS:

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

JOHN T. PRUD'HOMME
Chief, Consumer Protection Division

KIM VAN WINKLE
Chief, Antitrust Section

MARK A. LEVY
Assistant Attorney General
Consumer Protection Division, Antitrust Section
Office of the Attorney General of Texas
300 W. 15th Street, 7th Floor
Austin, Texas 78701
(512) 936-1847
(512) 320-0975 (Facsimile)
mark.levy@texasattorneygeneral.gov

FOR PLAINTIFF COMMONWEALTH OF VIRGINIA:

MARK R. HERRING
Attorney General of Virginia

CYNTHIA E. HUDSON
Chief Deputy Attorney General

RHODES B. RITENOUR
Deputy Attorney General for Civil Litigation

DAVID B. IRVIN
Virginia State Bar No. 23927
Senior Assistant Attorney General and Chief
MARK S. KUBIAK
Virginia State Bar No. 73119
Assistant Attorney General
Consumer Protection Section
Office of the Attorney General of Virginia
900 East Main Street
Richmond, Virginia 23219
Phone: (804) 786-4047
Facsimile: (804) 786-0122
dirvin@oag.state.va.us

FOR PLAINTIFF STATE OF WASHINGTON:

ROBERT W. FERGUSON
Attorney General of Washington

DARWIN P. ROBERTS
Deputy Attorney General

JONATHAN A. MARK
Chief, Antitrust Division

STEPHEN T. FAIRCHILD
State Bar No. 41214
Assistant Attorney General
Antitrust Division
Office of the Attorney General of Washington
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104
(206) 389-2848
(206) 464-6338 (Facsimile)
stephenf2@atg.wa.gov

FOR PLAINTIFF STATE OF WEST VIRGINIA:

PATRICK MORRISEY
Attorney General of West Virginia

ANN L. HAIGHT
Deputy Attorney General
Director, Consumer Protection and Antitrust Division


TANYA L. GODFREY
West Virginia State Bar No. 7448
District of Columbia Bar No. 1016435
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of West Virginia
269 Aikens Center
Martinsburg, WV 25404
(304) 267-0239
(304) 267-0248 (Facsimile)
Tanya.L.Godfrey@wvago.gov

APPENDIX

| CITY | STATE |
|------|-------|
| PHOENIX | AZ |
| TEMPE | AZ |
| TUCSON | AZ |
| ANAHEIM | CA |
| ANTIOCH | CA |
| BAKERSFIELD | CA |
| CHICO | CA |
| CHULA VISTA | CA |
| SACRAMENTO | CA |
| ESCONDIDO | CA |
| FREMONT | CA |
| FRESNO | CA |
| HANFORD | CA |
| LEMON GROVE | CA |
| LONG BEACH | CA |
| MADERA | CA |
| MERCED | CA |
| MODESTO | CA |
| OXNARD | CA |
| PALMDALE | CA |
| PARAMOUNT | CA |
| PASADENA | CA |
| POMONA | CA |
| RANCHO CUCAMONGA | CA |
| REDDING | CA |
| RIALTO | CA |
| SAN FERNANDO | CA |
| SANTA ANA | CA |
| SANTA MARIA | CA |
| SOUTH SAN FRANCISCO | CA |
| STOCKTON | CA |
| TORRANCE | CA |
| COLORADO SPRINGS | CO |
| FORT COLLINS | CO |
| PUEBLO | CO |
| AURORA | CO |
| THORNTON | CO |
| LITTLETON | CO |
| TWIN FALLS | ID |

| | |
|---|---|
| COEUR D'ALENE | ID |
| POCATELLO | ID |
| BOISE | ID |
| FOREST CITY | NC |
| HENDERSON | NC |
| MOREHEAD CITY | NC |
| MOUNT AIRY | NC |
| KINSTON | NC |
| WILKESBORO | NC |
| SHELBY | NC |
| WILSON | NC |
| CHARLOTTE | NC |
| DURHAM | NC |
| CLINTON | NC |
| KERNERSVILLE | NC |
| WILLIAMSTON | NC |
| REIDSVILLE | NC |
| ALBEMARLE | NC |
| MORGANTON | NC |
| MARION | NC |
| ASHTABULA | OH |
| ATHENS | OH |
| CAMBRIDGE | OH |
| GARFIELD HEIGHTS | OH |
| REYNOLDSBURG | OH |
| FAIRBORN | OH |
| DOVER | OH |
| GALLIPOLIS | OH |
| LIMA | OH |
| ONTARIO | OH |
| SANDUSKY | OH |
| TOLEDO | OH |
| CHILLICOTHE | OH |
| ELYRIA | OH |
| FAIRLAWN | OH |
| LANCASTER | OH |
| MARION | OH |
| WOOSTER | OH |
| CHELTENHAM | PA |
| LANCASTER | PA |
| JOHNSTOWN | PA |
| MONACA | PA |
| E. NORRITON TWP | PA |
| SHAMOKIN DAM | PA |

| STATE COLLEGE | PA |
|---|---|
| TANNERSVILLE | PA |
| UPPER DARBY | PA |
| WASHINGTON | PA |
| BURLESON | TX |
| AMARILLO | TX |
| BEAUMONT | TX |
| BRYAN | TX |
| DEL RIO | TX |
| DENTON | TX |
| LAKE JACKSON | TX |
| LUFKIN | TX |
| ODESSA | TX |
| SAN ANGELO | TX |
| CHRISTIANSBURG | VA |
| ALTAVISTA | VA |
| COLLINSVILLE | VA |
| DANVILLE | VA |
| FARMVILLE | VA |
| FRONT ROYAL | VA |
| GALAX | VA |
| LEESBURG | VA |
| PETERSBURG | VA |
| RICHMOND | VA |
| SOUTH HILL | VA |
| STAUNTON | VA |
| SUFFOLK | VA |
| TAPPAHANNOCK | VA |
| WOODBRIDGE | VA |
| BREMERTON | WA |
| EVERETT | WA |
| KENNEWICK | WA |
| MOUNT VERNON | WA |
| OLYMPIA | WA |
| RENTON | WA |
| SPOKANE | WA |
| UNION GAP | WA |
| LOGAN | WV |
| PRINCETON | WV |
| LEWISBURG | WV |
| BARBOURSVILLE | WV |
| OAK HILL | WV |
| SOUTH CHARLESTON | WV |