# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF COLORADO, STATE OF IDAHO, COMMONWEALTH OF PENNSYLVNIA, STATE OF TEXAS, COMMONWEALTH OF VIRGINIA, STATE OF WASHINGTON, and STATE OF WEST VIRGINIA, <br><br> *Plaintiffs,* <br><br> v. <br><br> SPRINGLEAF HOLDINGS, INC., ONEMAIN FINANCIAL HOLDINGS, LLC, and CITIFINANCIAL CREDIT COMPANY, <br><br> *Defendants.* | CASE NO.: 1:15-cv-01992 (RMC) |

## FINAL JUDGMENT

WHEREAS, Plaintiffs United States of America, and the States of Colorado, Idaho, Texas, Washington and West Virginia, and the Commonwealths of Pennsylvania and Virginia (collectively, "Plaintiff States"), filed their Complaint on November 13, 2015, Plaintiffs and Defendants Springleaf Holdings, Inc., OneMain Financial Holdings, LLC, and CitiFinancial Credit Company, by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by the Defendants to assure that competition is not substantially lessened;

AND WHEREAS, Plaintiffs require Defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to Plaintiffs that the divestitures required below can and will be made and that Defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. <u>Jurisdiction</u>

This Court has jurisdiction over the subject matter of and each of the parties to this action.  The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. <u>Definitions</u>

As used in this Final Judgment:

A.     "Acquirer" means Lendmark or another entity to which Defendants divest the Divestiture Assets.

B.     "Springleaf" means Defendant Springleaf Holdings, Inc., a Delaware corporation with its headquarters in Evansville, Indiana, and its successors, assigns, subsidiaries, divisions,

groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

      C.     "OneMain" means Defendant OneMain Financial Holdings, LLC, a Delaware limited liability company with its headquarters in Baltimore, Maryland, and its successors, assigns, subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

      D.     "CitiFinancial" means Defendant CitiFinancial Credit Company, a Delaware corporation, with its headquarters in Dallas, Texas, that is a wholly owned subsidiary of Citigroup and the holding company of OneMain.

      E.     "Lendmark" means Lendmark Financial Services, LLC, a Georgia limited liability company with its headquarters in Covington, Georgia, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

      F.     "Divestiture Branches" means the Springleaf branches identified in the Attachment to this Final Judgment.

      G.     "Divestiture Assets" means the Divestiture Branches, including, but not limited to:

          (1)    All real property and improvements, equipment, fixed assets, personal property, office furniture, materials, and supplies; all licenses, permits and authorizations issued by any governmental organization to the extent permitted by such governmental organization; and all contracts, leases and agreements related to the Divestiture Branches.

3

(2)     All active loans originated or serviced at the Divestiture Branches; all insurance and other ancillary products sold in conjunction with such loans; all loan documents, records, files, current and past customer information, accounts, and agreements related to such loans and ancillary products; all historical performance information (including account-level payment histories) and all customers' credit scores and other credit metrics with respect to loans that are active, closed, paid-off, or defaulted that have been originated or serviced at the Divestiture Branches at any point since January 1, 2010.

(3)     In the event that Lendmark is not the Acquirer, at the Acquirer's option, all tangible and intangible assets related to Springleaf's back office and technical support for loan origination, underwriting, and servicing at the Divestiture Branches, including, but not limited to, all equipment and fixed assets; all patents, licenses and sublicenses, intellectual property, technical information, computer software and related documentation, know-how, and trade secrets; and all manuals and technical information Springleaf provides to its own employees.

### III. Applicability

A.      This Final Judgment applies to Springleaf, OneMain and CitiFinancial, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.      If, prior to complying with Section IV and V of this Final Judgment, Springleaf sells or otherwise disposes of all or substantially all of its assets or of lesser business units that include the Divestiture Assets, it shall require the purchaser to be bound by the provisions of this

Final Judgment.  Springleaf need not obtain such an agreement from the Acquirer(s) of the assets

divested pursuant to this Final Judgment.

## IV. Divestitures

A.      Springleaf is ordered and directed within 120 calendar days after the filing of the

Complaint in this matter, or within five (5) calendar days after satisfaction of all state licensing

requirements, whichever is sooner, to divest the Divestiture Assets in a manner consistent with

this Final Judgment to Lendmark.  The United States, in its sole discretion, after consultation

with the Plaintiff States, may agree to one or more extensions of this time period not to exceed

sixty (60) calendar days in total, and shall notify the Court in such circumstances.  In the event

that Lendmark has initiated the state licensing process in a particular state but has not satisfied

the state's licensing requirements before the end of the period specified in this Paragraph IV(A),

the period shall be extended until five (5) calendar days after satisfaction of the state licensing

requirements with respect to those Divestiture Assets.  Springleaf agrees to use its best efforts to

divest the Divestiture Assets as expeditiously as possible.

B.      In the event Lendmark is not the Acquirer of the Divestiture Assets in one or

more states, Springleaf or the Monitoring Trustee shall promptly notify the United States of that

fact in writing.  In such circumstance, within thirty (30) calendar days after the United States

receives such notice, or within five (5) days of satisfaction of all state licensing requirements,

whichever is sooner, Springleaf shall divest the remaining Divestiture Assets in a manner

consistent with this Final Judgment to an alternative Acquirer(s) acceptable to the United States,

in its sole discretion, after consultation with the relevant Plaintiff States.  The United States, in

its sole discretion, after consultation with the relevant Plaintiff States, may agree to one or more

extensions of either time period in this Paragraph IV(B), provided that the extension of either

time period shall not exceed sixty (60) calendar days in total. The United States shall notify the Court of any such extension of time.

      C.    In the event that Lendmark is not the Acquirer of the Divestiture Assets in one or more states, Springleaf shall make known, by usual and customary means, the availability of the remaining Divestiture Assets. Springleaf shall inform any person making an inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. Springleaf shall offer to furnish to all prospective acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client privilege or work-product doctrine. Springleaf shall make available such information to Plaintiffs at the same time that such information is made available to any other person.

      D.    Springleaf shall provide the Acquirer(s) and the United States information relating to the personnel employed at each Divestiture Branch to enable the Acquirer(s) to make offers of employment. Springleaf shall not interfere with any negotiations by the Acquirer(s) to employ any Springleaf employee who works at any Divestiture Branch.

      E.    Springleaf shall permit prospective acquirers of the Divestiture Assets to have reasonable access to personnel and to make inspections of the Divestiture Branches; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

      F.    Defendants shall not take any action that would impede in any way the permitting, operation, or divestiture of the Divestiture Assets. Springleaf shall use its best efforts to assist

the Acquirer(s) in satisfying any state licensing requirements or obtaining any other needed governmental approvals relating to the acquisition of the Divestiture Assets.

G.      For a period of two (2) years from the date of the filing of the Complaint in this matter, Defendants shall not enter into any non-compete agreement with any employee at any of Defendants' branches or with any regional manager with responsibility for managing any of Defendants' branches. Defendants shall waive all obligations under any existing non-compete agreement with any such employee.

H.      At the option of the Acquirer(s), Springleaf shall enter into a transition services agreement with the Acquirer(s) for back office and technical support sufficient to meet all or part of the needs of the Acquirer(s) for a period of up to six (6) months. The United States, in its sole discretion, may approve one or more extensions of this agreement for a total of up to an additional six (6) months. The transition services provided pursuant to such an agreement shall include, but are not limited to, providing the Acquirer(s) access to a separate information technology environment within Springleaf's information systems for loan origination, administration and servicing. During the term of the transition services agreement, Springleaf shall implement and maintain procedures to preclude the sharing of data between Springleaf and the Acquirer(s). The terms and conditions of any contractual arrangement intended to satisfy this provision must be reasonably related to market conditions.

I.      Unless the United States otherwise consents in writing, the divestiture pursuant to Section IV, or by a Divestiture Trustee appointed pursuant to Section V, of this Final Judgment, shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, after consultation with the relevant Plaintiff States, that the Divestiture Assets can and will be used by the Acquirer(s) as part of a viable, ongoing

7

business involving the provision of personal installment loans to subprime borrowers in the United States. Divestiture of the Divestiture Branches may be made to one or more Acquirer(s), provided that Springleaf must divest to a single Acquirer all of the Divestiture Branches located in a particular state and that, in each instance, it is demonstrated to the sole satisfaction of the United States that the Divestiture Branches will remain viable and the divestiture of such assets will remedy the competitive harm alleged in the Complaint. The divestiture, whether pursuant to Section IV or Section V of this Final Judgment,

> (1)    shall be made to an Acquirer or Acquirers that, in the United States's sole judgment, after consultation with the Plaintiff States, has the intent and capability (including the necessary managerial, operational, technical and financial capability) of competing effectively in the provision of personal installment loans to subprime borrowers in the United States; and

> (2)    shall be accomplished so as to satisfy the United States, in its sole discretion, after consultation with the Plaintiff States, that none of the terms of any agreement between the Acquirer(s) and Springleaf gives Springleaf the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer(s) to compete effectively.

## V. <u>Appointment of Divestiture Trustee</u>

A.      If Springleaf has not divested the Divestiture Assets within the time period specified in Paragraph IV(A) or Paragraph IV(B), Springleaf shall notify Plaintiffs of that fact in writing.  Upon application of the United States, the Court shall appoint a Divestiture Trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B.      After the appointment of a Divestiture Trustee becomes effective, only the Divestiture Trustee shall have the right to sell the Divestiture Assets.  The Divestiture Trustee shall have the power and authority to accomplish the divestiture to an Acquirer or Acquirers acceptable to the United States, after consultation with the Plaintiff States, at such price and on such terms as are then obtainable upon reasonable effort by the Divestiture Trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate.  Subject to Paragraph V(D) of this Final Judgment, the Divestiture Trustee may hire at the cost and expense of Springleaf any investment bankers, attorneys, or other agents, who shall be solely accountable to the Divestiture Trustee, reasonably necessary in the Divestiture Trustee's judgment to assist in the divestiture.  Any such investment bankers, attorneys, or other agents shall serve on such terms and conditions as the United States approves including confidentiality requirements and conflict of interest certifications.

C.      Defendants shall not object to a sale by the Divestiture Trustee on any ground other than the Divestiture Trustee's malfeasance.  Any such objections by Defendants must be conveyed in writing to the United States and the Divestiture Trustee within ten (10) calendar days after the Divestiture Trustee has provided the notice required under Section VI.

D.    The Divestiture Trustee shall serve at the cost and expense of Springleaf pursuant to a written agreement, on such terms and conditions as the United States approves including confidentiality requirements and conflict of interest certifications.  The Divestiture Trustee shall account for all monies derived from the sale of the assets sold by the Divestiture Trustee and all costs and expenses so incurred.  After approval by the Court of the Divestiture Trustee's accounting, including fees for its services yet unpaid and those of any professionals and agents retained by the Divestiture Trustee, all remaining money shall be paid to Springleaf and the trust shall then be terminated.  The compensation of the Divestiture Trustee and any professionals and agents retained by the Divestiture Trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the Divestiture Trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.  If the Divestiture Trustee and Springleaf are unable to reach agreement on the Divestiture Trustee's or any agents' or consultants' compensation or other terms and conditions of engagement within fourteen (14) calendar days of appointment of the Divestiture Trustee, the United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court.  The Divestiture Trustee shall, within three (3) business days of hiring any other professionals or agents, provide written notice of such hiring and the rate of compensation to Springleaf and the United States.

E.    Springleaf shall use its best efforts to assist the Divestiture Trustee in accomplishing the required divestiture.  The Divestiture Trustee and any consultants, accountants, attorneys, and other agents retained by the Divestiture Trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested,

10

and Springleaf shall develop financial and other information relevant to such business as the Divestiture Trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information or any applicable privileges. Defendants shall take no action to interfere with or to impede the Divestiture Trustee's accomplishment of the divestiture.

F.    After its appointment, the Divestiture Trustee shall file monthly reports with the United States and, as appropriate, the Court setting forth the Divestiture Trustee's efforts to accomplish the divestiture ordered under this Final Judgment. To the extent such reports contain information that the Divestiture Trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The Divestiture Trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

G.    If the Divestiture Trustee has not accomplished the divestiture ordered under this Final Judgment within six (6) months after its appointment, the Divestiture Trustee shall promptly file with the Court a report setting forth (1) the Divestiture Trustee's efforts to accomplish the required divestiture, (2) the reasons, in the Divestiture Trustee's judgment, why the required divestiture has not been accomplished, and (3) the Divestiture Trustee's recommendations. To the extent such report contains information that the Divestiture Trustee deems confidential, such reports shall not be filed in the public docket of the Court. The Divestiture Trustee shall at the same time furnish such report to the United States which shall

11

have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the Divestiture Trustee's appointment by a period requested by the United States.

      H.     If the United States determines that the Divestiture Trustee has ceased to act or failed to act diligently or in a reasonably cost-effective manner, it may recommend the Court appoint a substitute Divestiture Trustee.

## VI. <u>Notice of Proposed Divestiture</u>

      A.     Within two (2) business days following execution of a definitive divestiture agreement, Springleaf or the Divestiture Trustee, whichever is then responsible for effecting the divestiture required herein, shall notify Plaintiffs of any proposed divestiture required by Section IV or V of this Final Judgment. If the Divestiture Trustee is responsible, it shall similarly notify Springleaf. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

      B.     Within fifteen (15) calendar days of receipt by the United States of such notice, the United States, after consultation with the Plaintiff States, may request from Springleaf, the proposed Acquirer(s), any other third party, or the Divestiture Trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer(s), and any other potential Acquirer(s). Springleaf and the Divestiture Trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.      Within thirty (30) calendar days after receipt of the notice or within twenty (20)

calendar days after the United States has been provided the additional information requested

from Springleaf, the proposed Acquirer(s), any third party, and the Divestiture Trustee,

whichever is later, the United States shall provide written notice to Springleaf and the Divestiture

Trustee, if there is one, stating whether or not it objects to the proposed divestiture.  If the United

States provides written notice that it does not object, the divestiture may be consummated,

subject only to Springleaf's limited right to object to the sale under Paragraph V(C) of this Final

Judgment.  Absent written notice that the United States does not object to the proposed

Acquirer(s) or upon objection by the United States, a divestiture proposed under Section IV or

Section V shall not be consummated.  Upon objection by Springleaf under Paragraph V(C), a

divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII.  Financing

Defendants shall not finance all or any part of any purchase made pursuant to Section IV

or V of this Final Judgment.

## VIII.  Asset Preservation

Until the divestiture required by this Final Judgment has been accomplished, Defendants

shall take all steps necessary to comply with the Asset Preservation Stipulation and Order

entered by this Court.  Defendants shall take no action that would jeopardize the divestiture

ordered by this Court.

## IX.  Affidavits

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter, and

every thirty (30) calendar days thereafter until the divestiture has been completed under Section

IV or V, Springleaf shall deliver to the United States an affidavit as to the fact and manner of its

13

compliance with Section IV or V of this Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts Springleaf has taken to solicit buyers for the Divestiture Assets, and to provide required information to prospective acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by Springleaf, including limitation on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B.    Within twenty (20) calendar days of the filing of the Complaint in this matter, Defendants shall deliver to the United States an affidavit that describes in reasonable detail all actions Defendants have taken and all steps Defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment. Defendants shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in Defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

C.    Springleaf shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

## X. Appointment of Monitoring Trustee

A.    Upon application of the United States, the Court shall appoint a Monitoring Trustee selected by the United States and approved by the Court.

14

B.      The Monitoring Trustee shall have the power and authority to monitor Defendants' compliance with the terms of this Final Judgment and the Asset Preservation Stipulation and Order entered by this Court, and shall have such other powers as this Court deems appropriate.  The Monitoring Trustee shall be required to investigate and report on the Defendants' compliance with this Final Judgment and the Asset Preservation Stipulation and Order and the Defendants' progress toward effectuating the purposes of this Final Judgment.

C.      Subject to Paragraph X(E) of this Final Judgment, the Monitoring Trustee may hire at the cost and expense of Springleaf any consultants, accountants, attorneys, or other agents, who shall be solely accountable to the Monitoring Trustee, reasonably necessary in the Monitoring Trustee's judgment.  Any such consultants, accountants, attorneys, or other agents shall serve on such terms and conditions as the United States approves including confidentiality requirements and conflict of interest certifications.

D.      Springleaf shall not object to actions taken by the Monitoring Trustee in fulfillment of the Monitoring Trustee's responsibilities under any Order of this Court on any ground other than the Monitoring Trustee's malfeasance.  Any such objections by Springleaf must be conveyed in writing to the United States and the Monitoring Trustee within ten (10) calendar days after the action taken by the Monitoring Trustee giving rise to Springleaf's objection.

E.      The Monitoring Trustee shall serve at the cost and expense of Springleaf pursuant to a written agreement with Springleaf and on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications.  The compensation of the Monitoring Trustee and any consultants, accountants, attorneys, and other agents retained by the Monitoring Trustee shall be on reasonable and customary terms

15

commensurate with the individual's experience and responsibilities. If the Monitoring Trustee and Springleaf are unable to reach agreement on the Monitoring Trustee's or any agent's or consultant's compensation or other terms and conditions of engagement within fourteen (14) calendar days of appointment of the Monitoring Trustee, the United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court. The Monitoring Trustee shall, within three (3) business days of hiring any consultants, accountants, attorneys, or other agents, provide written notice of such hiring and the rate of compensation to Springleaf and the United States.

      F.     The Monitoring Trustee shall have no responsibility or obligation for the operation of Springleaf's business.

      G.     Defendants shall use their best efforts to assist the Monitoring Trustee in monitoring Defendants' compliance with their individual obligations under this Final Judgment and under the Asset Preservation Stipulation and Order. The Monitoring Trustee and any consultants, accountants, attorneys, and other agents retained by the Monitoring Trustee shall have full and complete access to the personnel, books, records, and facilities relating to compliance with this Final Judgment, subject to reasonable protection for trade secret or other confidential research, development, or commercial information or any applicable privileges. Defendants shall take no action to interfere with or to impede the Monitoring Trustee's accomplishment of its responsibilities.

      H.     After its appointment, the Monitoring Trustee shall file reports monthly, or more frequently as needed, with the United States and, as appropriate, the Court, setting forth Defendants' efforts to comply with their obligations under this Final Judgment and under the Asset Preservation Stipulation and Order. To the extent such reports contain information that the

16

Monitoring Trustee deems confidential, such reports shall not be filed in the public docket of the Court.

I.      The Monitoring Trustee shall serve until the divestiture of all the Divestiture Assets is finalized pursuant to either Section IV or Section V of this Final Judgment and the expiration of any continuing transition services agreement.

J.      If the United States determines that the Monitoring Trustee has ceased to act or failed to act diligently or in a reasonably cost-effective manner, it may recommend the Court appoint a substitute Monitoring Trustee.

## XI.  Compliance Inspection

A.      For the purposes of determining or securing compliance with this Final Judgment, or of any related orders such as any Asset Preservation Order, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

(1)     access during Defendants' office hours to inspect and copy, or at the option of the United States, to require Defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

(2)     to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present,

17

regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.      Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports or response to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.      No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, or the Plaintiff States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      If at the time information or documents are furnished by Defendants to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give Defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XII. No Reacquisition

Defendants may not reacquire any part of the Divestiture Assets during the term of this Final Judgment.

18

### XIII.  **Retention of Jurisdiction**

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

### XIV.  **Expiration of Final Judgment**

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry.

### XV.  **Public Interest Determination**

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States's responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: *15 April 2016*

Court approval subject to procedures of Antitrust Procedures and Penalties Act, 15 U.S.C. § 16

_____

United States District Judge